## DAVID ADKINS v. COMMONWEALTH.

**Criminal Law—Homicide—Instructions.**
> The statute provides that if there be a reasonable doubt of the degree of the offense committed by the defendant he shall only be convicted of the lower degree, and the court erred in refusing to so instruct the jury.

**Self-Defense—Instruction.**
> Where self-defense is asserted in the trial of a person charged with murder the court should instruct the jury, in substance, that in deciding whether the defendant was in immediate danger of sustaining great personal injury he had a right to consider not only the circumstances immediately surrounding him, but any other facts or circumstances in evidence which might reasonably have operated to produce a belief that he was then about to lose his life or sustain great bodily injury from the deceased or others acting in concert with her.

APPEAL FROM KNOX CIRCUIT COURT.

November 23, 1877.

OPINION BY JUDGE COFER:

Section 329 of the Criminal Code provides that "If there be a reasonable doubt of the degree of the offense which the defendant has committed he shall only be convicted of the lower degree." The court, therefore, erred in refusing so to instruct the jury. The commonwealth is not only bound to prove that the prisoner committed the offense, but to prove what that offense is, and the instruction marked "number seven," asked by counsel for the prisoner, should have been given.

The evidence tended to prove that the deceased, but a few days before she was killed, entered into a conspiracy with two other persons, relatives of hers, to do violence to the person of the prisoner, and that she spoke of still another person who would help them. Her body was found on the opposite side of the river from her residence in the road leading to the prisoner's house; he had a boat in the river, and rain was falling and the river was rising, and the prisoner might be expected to return to look after his boat.

If he met the deceased as he went toward the river in the night-time the circumstance was calculated to arouse his apprehension that she was not alone; he would naturally have adverted to the effort of the Perkinses to call him out of the mill to receive his ferriage money, on the occasion spoken of to John W. Faulkner and his wife by the deceased, when it was arranged that he was to be mobbed if he came out; the evidence showed that his lip and face were bruised, and the commonwealth admitted, as a fact, that the deceased could not have inflicted these injuries after she was stabbed. The jury, therefore, might have found that there had been a rencounter, if they believed the prisoner killed the deceased. If there was such a rencounter, the bruises on the person of the prisoner and the absence of any marks of violence on the person of the deceased, except the cut on the neck, tended to prove that she commenced the combat. In view of what had before taken place in the attempt to get the prisoner out of his mill to mob him, and the circumstances that he may have been met in the road at night and possibly was assailed by the deceased, it was not unreasonable that he should conclude that she had succor at hand, and the court, although properly refusing the instruction marked "six," should have given an instruction in substance "that in deciding whether he was in immediate danger of sustaining great personal injury the prisoner had a right to consider not only the circumstances immediately surrounding him, but any other facts or circumstances in evidence which might reasonably have operated

to produce a belief that he was then about to lose his life or to sustain great bodily injury from the deceased or others acting in concert with her.

Instruction 3 given by the court was not necessarily involved, and was calculated to mislead the jury if it was not actually erroneous. It is difficult to perceive what effect, not prejudicial to the prisoner, could have been produced on the minds of the jury by the expression "exercising ordinary prudence" as applied to him in that instruction. In what respect was he required to exercise "ordinary prudence"? Did the court mean that he was to exercise ordinary prudence in forming a belief whether he was in danger of sustaining great bodily injury? If so, the language was, to say the least of it, wholly unnecessary, for unless he had reasonable grounds for such belief it was immaterial whether he exercised ordinary prudence or not, and if he had no apparently reasonable grounds for such belief the exercise of ordinary prudence would not excuse him.

So, too, with the expression "as an ordinarily prudent man would have deemed necessary under the circumstances." If the prisoner met the deceased and had reasonable grounds to believe, and did believe, he was about to lose his life or suffer great personal injury at her hands, or at the hands of others acting, or who he had reasonable ground to believe were acting in concert with her, and he had no apparent and safe means of escaping the apparently impending danger, he had a right to stab her, and should be acquitted, and the court should have so instructed the jury, instead of giving instruction 3.

One upon whom an ordinary assault is made must use only such force as is necessary to repel the assault and protect himself, and if he unnecesarily uses a deadly weapon and death ensues he will be guilty of murder or manslaughter according to the circumstances of the case.

But that doctrine has no application to one who is in peril of immediately losing his life or suffering a great personal injury. He is not bound at his peril to apportion the force used to the actual danger, or to the actual necessity of the occasion. He has a right to secure his own safety at once and effectually.

If he can, with due regard to his own safety, escape from the impending danger otherwise than by slaying his adversary, he should do so. But if he cannot avoid the danger except by the use of force, and he slays his enemy, he will not be guilty if upon a nice balancing of the probabilities it should appear that a little less force would have

secured his safety. It would be unreasonable to require one whose life or limb is in immediate danger to judge at his peril just how much force is necessary to secure his safety, and to make his guilt, or innocence depend upon the correctness of his judgment in that respect.

The other instructions asked for the prisoner were properly refused. For the errors indicated the judgment is *reversed,* and the cause is remanded for a new trial upon principles not inconsistent with this opinion.

*John Smith, for appellant. Moss & Finley, for appellee.*